**STATE OF WEST VIRGINIA**

*In re* **C.C.-1, K.C., M.C., D.C., and C.C.-2**

**No. 18-0090** (Mercer County 16-JA-66, 67, 68, 69, and 70)

**FILED**

**June 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner D.B., the children's step-father, by counsel Joshua J. Lawson, appeals the Circuit Court of Mercer County's January 3, 2018, order terminating his custodial rights to C.C.-1, K.C., M.C., D.C., and C.C.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Catherine Bond Wallace, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his custodial rights without first granting him a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 20, 2016, the DHHR filed an abuse and neglect petition that alleged that petitioner and the mother abused drugs and alcohol and engaged in domestic violence in front of the children.[2] The petition also alleged that the children disclosed to the DHHR that petitioner strangled the mother in front of them, threatened C.C.-1 with physical violence, and drove while intoxicated with C.C.-2 in the vehicle. Petitioner waived the preliminary hearing.

On June 3, 2016, the circuit court held an adjudicatory hearing and found that petitioner abused and neglected the children based upon his stipulation. The circuit court granted

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children have the same initials, they will be referred to as C.C.-1 and C.C.-2, respectively, throughout this memorandum decision.

[2]Petitioner is married to the children's mother and is their step-father.

petitioner's motion for a post-adjudicatory improvement period, which required him to complete substance abuse treatment, gain stable housing, address domestic violence issues, and complete the Batterers Intervention and Prevention Program ("BIPPS"). Petitioner was arrested on May 1, 2017, for strangling the mother and was subsequently placed on home incarceration. On May 19, 2017, the DHHR filed a motion to terminate petitioner's custodial rights alleging that he failed to complete substance abuse treatment, gain stable housing, address the domestic violence issues, or complete BIPPS education.

After multiple continuances of the dispositional hearing, the circuit court held a final dispositional hearing on December 1, 2017. Petitioner moved to continue to participate in his post-adjudicatory improvement period. However, both the guardian and the DHHR objected to an extension. The DHHR presented evidence from two CPS workers that petitioner failed to consistently comply with services until after he was placed on home incarceration, and subsequently probation and that petitioner had not had any visits with the children during the proceedings because the children were afraid of him and did not want to see him. Petitioner admitted that he did not comply with services at the beginning of the proceedings. He explained that he and the mother were "in a bad situation," their housing was unstable, and they were abusing drugs and alcohol. He further stated that he changed within the past six months because he wanted the children back and wanted to comply with services. He testified that he was not just compliant because he was on probation and explained that his circumstances changed because he now had an apartment and food in the home. Finally, he testified that he had not had in-person contact with the children, only phone calls. Following petitioner's testimony, the circuit court noted that the children "are scared of [petitioner] and probably rightfully so," and permanency needed to be established. The circuit court found no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that it was in the best interests of the children to terminate his custodial rights. Ultimately, the circuit court terminated petitioner's custodial rights in its January 3, 2018, order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

---

[3]The mother's parental rights were also terminated and the children's father's custodial rights were terminated. According to the parties, C.C.-1 is in a kinship placement and the permanency plan is adoption in that home. M.C., D.C., and C.C.-2 are placed together in a foster home and the permanency plan for those children is adoption in that home. K.C. is in Highland Hospital's residential treatment program. The permanency plan for K.C. is adoption following her completion of the program.

committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying his motion for a post-dispositional improvement period prior to terminating his custodial rights. However, the record shows petitioner never moved for a post-dispositional improvement period. Instead he requested to "continue with [his] improvement period[ ]." Therefore, petitioner is arguing on appeal that the circuit court erred in denying him an extension of his post-adjudicatory improvement period. In support, petitioner asserts that he complied with the terms and conditions of his post-adjudicatory improvement period and family case plan for five months prior to the dispositional hearing because he obtained stable housing, participated in services, and domestic violence between he and the mother ceased. We do not find this argument persuasive.

Under West Virginia Code § 49-4-610(2), a post-adjudicatory improvement period shall not exceed six months. Further, pursuant to West Virginia Code § 49-4-610(6),

[a] court may extend any improvement period granted pursuant to subdivision (2) or (3) of this section for a period not to exceed three months when the court finds that the [parent] has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child[ren]; and that the extension is otherwise consistent with the best interest of the child[ren].

Petitioner admits that he initially failed to comply with services during his improvement period. In fact, the record shows that his period of noncompliance lasted well over one year, during which he failed to participate in drug screens, obtain stable housing, or address his domestic violence issues through BIPPS education. Further, petitioner was arrested for strangling the mother during his post-adjudicatory improvement period. The record also shows that petitioner did not participate in visitation during the proceedings because the children did not want to see him. Although petitioner argues that he was permitted to have phone calls with the children, the circuit court noted at the dispositional hearing that the children "are scared of [petitioner] and probably rightfully so." According to petitioner, at the time of the dispositional hearing, he was participating in BIPPS education, but he had not completed it. Based on this evidence, petitioner failed to substantially comply with the terms and conditions of his post-adjudicatory improvement period, despite two prior extensions thereto, and did not meet the requisite burden to receive an additional extension of the same. Therefore, petitioner is entitled to no relief in this regard.

Further, we find no error in the circuit court's termination of petitioner's custodial rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate custodial rights

upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

The evidence discussed above also supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. In regards to the best interests of the children, petitioner argues that the children had not seen the improvements that he made or the "major changes in the relationship between [petitioner] and [the mother]," including the absence of domestic violence in the home. Petitioner further argues that "there is little likelihood the children will find permanency together" and it is in the children's best interests to allow petitioner and the mother to continue to work on establishing a home for the children. However, there is no evidence that the children are no longer afraid of petitioner or that they wish to see him. Also, as discussed, petitioner's post-adjudicatory improvement period lasted over a year and a half, and yet he still failed to address the domestic violence issues in the home, as evidenced by his arrest for strangling the mother and his failure to complete BIPPS education. Based on this evidence, termination of petitioner's custodial rights was in the best interests of the children.

While petitioner argues that the least-restrictive dispositional alternative was not utilized, we have held that

> "[t]ermination of parental[, custodial and guardianship] rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). As discussed, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his custodial rights was in the children's best interests. Therefore, termination was appropriate here.

Lastly, because the children's biological father retains his parental rights, Lastly, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the Court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

4

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 3, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: June 11, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.

5